# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FRANKIE LEE CALHOUN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:11CV1119 |
| | ) | |
| TODD PINION, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On February 17, 1999, in the Superior Court of Davidson County, Petitioner was convicted after a trial by jury of robbery with a dangerous weapon and three counts of first degree kidnapping in cases 97 CRS 12134 - 12137. (Docket Entry 2, ¶¶ 1-6; see also Docket Entry 2-11.)[1] The trial court sentenced Petitioner to a term of 133 to 169 months of imprisonment for the robbery conviction and a consecutive term of 121 to 155 months of imprisonment for the consolidated kidnapping convictions. (Docket Entry 2, ¶ 3; see also Docket Entry 2-11.)

---

[1] On August 7, 1997, Petitioner was convicted in the District Court of Davidson County of two counts of assault on a female arising out of the same incident as his robbery and kidnapping charges. (Docket Entry 2, ¶¶ 1-6; see also Docket Entry 2-7.) The district court sentenced Petitioner to two consecutive terms of 150 days' imprisonment. (See id.) Petitioner appealed those convictions in open court, entitling him to a trial de novo on those charges in the superior court under N.C. Gen. Stat. § 15A-1431(b). (Docket Entry 2-7 at 2, 4.) During his February 1999 trial on the felony charges, the State dismissed the two counts of assault on a female after the close of its evidence. (Docket Entry 2-10; see also Docket Entry 2-24 at 3.)

Petitioner appealed his convictions to the North Carolina Court of Appeals (Docket Entry 2, ¶¶ 8, 9; see also Docket Entry 2-2; Docket Entry 2-11 at 2, 4),[2] and that court denied his appeal on February 1, 2000 (Docket Entry 5, Ex. 1; see also Docket Entry 2, ¶ 9(c), (d)). Petitioner then filed a pro se "Motion for Appeal" in the North Carolina Supreme Court (Docket Entry 7-4), which he dated as signed on March 8, 2000 (see id. at 33).[3] In an order dated June 15, 2000, that court denied review. State v. Calhoun, 352 N.C. 151, 544 S.E.2d 229 (June 15, 2000).

On October 12, 2009, Petitioner filed a pro se "Motion for DNA Testing" and a "Motion to Locate and Preserve Evidence" with the trial court. (Docket Entry 2, ¶ 11(a).) The trial court denied those motions by order dated November 30, 2009, and filed December 1, 2009. (Docket Entry 2-3.) Petitioner thereafter submitted a pro se motion for appropriate relief ("MAR") with the state trial court (see Docket Entry 2, ¶ 11(b)), which he dated as signed on August 12, 2011 (see Docket Entry 2-4 at 15), and which that court accepted as filed on August 24, 2011 (see Docket Entry 2-17). The trial court denied the MAR by order dated and filed August 25, 2011. (Docket Entry 5, Ex. 3; see also Docket Entry 2-17; Docket

_____

[2] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[3] Petitioner mistakenly indicated in his Petition that he did not appeal his convictions beyond the North Carolina Court of Appeals. (See Docket Entry 2, ¶ 9(g).) The North Carolina Supreme Court's June 15, 2000 order attached to Respondent's brief in support of his motion to dismiss demonstrates that Petitioner did in fact appeal his convictions to the North Carolina Supreme Court. (See Docket Entry 5, Ex. 2.)

-2-

Entry 2, ¶ 11(b)(7), (8).)  Petitioner then filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals, which he dated as submitted on September 6, 2011 (Docket Entry 2-18 at 3), and which that court received as filed on September 12, 2011 (see Docket Entry 2-19 at 1).  The Court of Appeals denied Petitioner's certiorari petition by order dated October 3, 2011. (Docket Entry 5, Ex. 4; see also Docket Entry 2-19 at 1.)

Petitioner then submitted his Petition in this Court (Docket Entry 2), which he dated as mailed on December 16, 2011 (id. at 14), and which the Court received on December 20, 2011 (id. at 1). Respondent moved to dismiss the Petition on statute of limitation grounds (Docket Entry 4) and Petitioner responded in opposition (Docket Entry 7).  In addition, Petitioner filed an Application for Appointment of Counsel and Request for Evidentiary Hearing (Docket Entry 8).  The parties have consented to disposition of this case by a United States Magistrate Judge.  (Docket Entry 10.)

### Petitioner's Claims

Petitioner raises six claims for relief in his Petition: (1) the pretrial photographic line-up was impermissibly suggestive and tainted the in-court identification of Petitioner by the victims; (2) the trial court committed reversible error by permitting the State to exercise a peremptory challenge to an African-American juror; (3) trial counsel failed to provide an adequate defense at Petitioner's probable cause hearing and to properly appeal his misdemeanor assault convictions; (4) trial counsel failed to protect Petitioner's right against double jeopardy and to prevent

-3-

him suffering prejudice before the jury; (5) trial counsel failed to object to the judge submitting the kidnapping charges to the jury based on an alternative theory unsupported by the indictments; and (6) trial counsel failed to ensure Petitioner received a reliable sentencing hearing. (Docket Entry 2 at 5, 6-7, 8, 10, 16-17.)

## Discussion

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[4] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:

---

[4] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

Petitioner argues that, "[p]ursuant to 28 U.S.C. 2244(d)(1)(B), state action created an impediment to Petitioner filing a Petition within the time limit, which said action is in violation of the constitution or laws of the United States." (Docket Entry 2, ¶ 18; see also Docket Entry 7 at 2-11.) More specifically, Petitioner asserts that his district court counsel failed to advise him that the proceeding taking place on August 7, 1997 constituted a trial on the two misdemeanor assault charges and, thus, that he mistook the trial for a probable cause hearing. (Docket Entry 7 at 3.) Upon conviction of the assault charges, Petitioner alleges that he instructed his district court counsel to appeal, which was then done in open court. (Id.) Petitioner claims that his district court counsel informed Petitioner that he would pursue the appeal but never recontacted Petitioner about it

-5-

or indicated that he was withdrawing his representation. (Docket Entry 7 at 3-4 & n.1.)

Petitioner further contends that he told his superior court counsel "that he had already been convicted and sentenced on the assault charges and had just come from prison serving the sentence for those charges," and that his counsel stated that "he would look into the matter and get back with Petitioner but never did." (Docket Entry 7 at 5.) Petitioner admits that the State dismissed the assault charges against him at the close of its evidence, but claims that his superior court counsel did not explain the reason for the dismissal. (Id. at 6.) Thus, Petitioner claims he continued to believe his appeal of the assault charges remained pending until he received the State's September 29, 2011 brief in response to his certiorari petition with the Court of Appeals. (Docket Entry 7 at 3-4.) The brief explained that, because Petitioner had appealed his assault charges, they properly came before the superior court for trial de novo under N.C. Gen. Stat. § 15A-1431(b). (Docket Entry 7 at 3-4; see also Docket Entry 7-1 at 25.)

Petitioner appears to contend that his district court counsel's failure to further pursue the appeal of the assault charges and his superior court counsel's failure to adequately inform him about the status of his appeal of the assault charges constituted state impediments to his ability to file the instant Petition within the time limit. (Docket Entry 7 at 4-5.) Additionally, Petitioner appears to argue that the superior court's

-6-

failure to resolve the appeal of the assault charges, leaving him without a "final conviction date" for "purpose[s] of direct review," constituted a state impediment under § 2244(d)(1)B). (Docket Entry 7 at 8-9.)[5]   These arguments lack merit.

Subsection (B) requires Petitioner to show an impediment created by "State action" which violated the Constitution or laws of the United States, 28 U.S.C. § 2244(d)(1)(B).   Even under the liberal construction due to a pro se litigant, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Petitioner's allegations do not allege any "State action" as required by this subsection. Although a split in authority exists regarding whether constitutionally ineffective assistance of counsel can constitute "State action" under § 2244(d)(1)(B),[6] the Court need not decide

_____

[5] Petitioner's arguments demonstrate his misunderstanding of the nature and effect of appealing misdemeanor convictions from district court to superior court in North Carolina.  Upon a finding of guilt (either by plea or trial) in district court and an appeal by the defendant, a "trial de novo in a superior court is the defendant's _only_ option; North Carolina law provides no avenue for appellate review of the proceedings of a state district court."  United States v. Martin, 378 F.3d 353, 356 (4th Cir. 2004).  Thus, when a defendant files a notice of appeal as to a conviction in district court, "the slate is wiped clean; the prior conviction is annulled, and the prosecution and the defense begin anew in the [s]uperior [c]ourt."  Blackledge v. Perry, 417 U.S. 21, 22 (1974); see also Martin, 378 F.3d at 357-58 (recognizing that term "appeal" is a "misnomer" as applied to process that occurs when a defendant challenges conviction from district court in North Carolina).  Accordingly, once Petitioner's district court counsel noticed the appeal to superior court of Petitioner's misdemeanor convictions, neither his district court counsel nor his superior court counsel could have done anything to "further pursue" the appeal.

[6] Compare Winkfield v. Bagley, 66 F. App'x 578, 582 (6th Cir. May 28, 2003) (holding that "[t]he ineffective assistance of Winkfield's initial appellate counsel constitutes state action") (citing Murray v. Carrier, 477 U.S. 478, 489 (1986)), Sayles v. Warden, London Corr. Inst., No. 1:11-cv-524, 2012 WL 3527226, at *5 & n.2 (S.D. Ohio July 17, 2012) (unpublished) (following Winkfield and acknowledging split in authority), and Green v. Johnson, No. 2:03cv340, 2007 WL 951686, at *6 (E.D. Va. March 26, 2007) (unpublished) (finding that government appointed attorney's ineffective assistance qualified as State action), with Irons v. Estep, No. 05-1412, 2006 WL 991106, at *1 (10th Cir. Apr. 17, 2006) (continued...)

that issue, because Petitioner's allegations fall far short of establishing that the performance of either of his trial counsel fell below the standards of reasonableness set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984).  That standard requires a showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced petitioner, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have changed.  <u>See</u> <u>id.</u> at 678-88, 694.

Here, even assuming Petitioner could show deficient performance by either counsel, Petitioner cannot show prejudice resulting from their performance.  Petitioner admits that, in accordance with his instructions, his district court counsel appealed his misdemeanor convictions in open court.  (<u>See</u> Docket Entry 7 at 3; <u>see also</u> Docket Entry 7-1, ¶ 5; Docket Entry 2-7 at 2, 4.)  Further, Petitioner acknowledges that his superior court counsel persuaded the State to dismiss those charges when they came

---

[6](...continued)
(unpublished) (agreeing with district court's holding that "defense attorneys are not state actors 'when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding'" (quoting <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981))), <u>Lawrence v. Florida</u>, 421 F.3d 1221, 1226 (11th Cir. 2005) ("[W]e conclude that [the] assertion that the State impeded [the petitioner] from timely filing by providing an incompetent attorney to assist him . . . is meritless.  This is not the type of State impediment envisioned in § 2244(d)(1)(B)."), <u>Carter v. Virginia</u>, No. 3:09CV121-HEH, 2010 WL 331758, at *2 (E.D. Va. Jan. 26, 2010) (unpublished) (following <u>Lawrence</u>), <u>O'Neal v. South Carolina</u>, No. 9:08-587-HFF-BM, 2008 WL 4960423, at *3 (D.S.C. Nov. 20, 2008) (unpublished) (concluding "that the actions of a criminal defense attorney . . . are not state action"), <u>Ramos v. Carey</u>, No. C 03-1323 SI (PR), 2003 WL 21788799, at *2 (N.D. Cal. July 31, 2003) (unpublished) (finding that "[a]n attorney's failure to file an appeal is simply not an impediment created by State action" (internal quotations omitted)), <u>and</u> <u>Dunker v. Bissonnette</u>, 154 F. Supp. 2d 95, 104-05 (D. Mass. 2001) (noting persuasiveness of cases decided under 42 U.S.C. § 1983 holding "that state appointed attorneys performing traditional functions as counsel do not act under color of state law")

-8-

before the superior court for trial de novo (see Docket Entry 7 at 4-5; see also Docket Entry 7-1, ¶ 11), and that this same counsel pursued a direct appeal of his felony convictions in the North Carolina Court of Appeals (see Docket Entry 2, ¶¶ 8, 9; see also Docket Entry 2-2; Docket Entry 2-11 at 2, 4). Absent facts establishing constitutionally ineffective assistance of counsel, the Court lacks even a colorable basis to conclude that trial counsel's conduct constitutes "State action" under § 2244(d)(1)(B).

Petitioner's allegations regarding the superior court's alleged failure to resolve his misdemeanor appeal fare no better. The record establishes that the State dismissed the misdemeanor charges when they came before the superior court for a trial de novo. (Docket Entry 2-10; see also Docket Entry 2-24 at 3.) Although Petitioner may have misunderstood the import of the dismissal of those charges, his incorrect interpretation of his circumstances does not amount to "State action." Under these facts, no basis exists for any belated commencement of the statute of limitations under § 2244(d)(1)(B).[7]

---

[7] Even assuming that Petitioner had sufficiently shown a State-created impediment, he has not shown how such impediment prevented him from filing the instant Petition. See Winkfield, 66 F. App'x at 582-83 ("'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.'" (quoting Dunker, 154 F. Supp. 2d at 105)). Petitioner has not alleged that either of his counsel erroneously advised him that he had no federal remedies or that his appellate counsel actually told him that his misdemeanor appeal remained pending after the dismissal of those charges in superior court. Moreover, no basis existed under North Carolina law for Petitioner to believe that any appeal of the district court proceedings remained pending. See generally United States v. Martin, 378 F.3d 353, 356-58 (4th Cir. 2004) (discussing effect of "appeal" of convictions from district courts in North Carolina).

-9-

Petitioner further alleges that he "should be provided a later accrual date under section 2244(d)(1)(D) because [he] . . . only learned of" the "factual basis for the claims" in the instant Petition in 2011, when another inmate helped him. (Docket Entry 7 at 11-12.) This argument also lacks merit.

Under section 2244(d)(1)(D), the one-year limitations period begins to run on "the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence." The facts underlying Petitioner's claims include (1) his conviction of misdemeanor assault charges in district court at what he perceived as a probable cause hearing; (2) his appeal of those convictions; (3) an unsatisfactory pretrial photographic lineup; (4) an improper peremptory challenge of an African-American juror; (5) an improper jury instruction on the kidnapping charges; (6) his conviction of robbery and kidnapping charges in superior court; (7) the dismissal of the assault charges in superior court; and (8) errors during the sentencing phase of his trial. (See Docket Entry 2 at 5, 6-7, 8, 10, 16-17.) Petitioner knew, or should have known with the exercise of due diligence, all of these facts at the time of his convictions on February 17, 1999.

Moreover, the dates in 2011 on which Petitioner allegedly realized that (1) resolution of his misdemeanor appeal had already occurred (see Docket Entry 7 at 3-4) and (2) he may have other claims relating to his convictions and sentences (see id. at 11-12) represent only the point in time when he discovered the legal

significance of his claims, as opposed to the facts supporting such claims. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)("[T]he trigger in § 2244(d)(1)(D) is (actual or imputed) discovery of the claim's 'factual predicate', not recognition of the facts' legal significance."); see also Diver v. Jackson, No. 5:11-HC-2155-FL, 2012 WL 3228971, at *3 (E.D.N.C. Aug. 6, 2012) (rejecting argument under § 2244(d)(1)(D) that limitations period should start on date petitioner heard of relevant Supreme Court case, because that date reflected time when petitioner discovered legal significance of his claim and not facts underlying such claim), appeal dismissed, 487 F. App'x 96 (4th Cir. 2012). Under the facts alleged, no basis exists for delayed commencement of the statute of limitations under § 2244(d)(1)(D).

As the record does not reveal any grounds for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, the trial court entered judgment against Petitioner on February 17, 1999 (see Docket Entry 2-11), the Court of Appeals denied his appeal on February 1, 2000 (see Docket Entry 5, Ex. 1), and the North Carolina Supreme Court denied his certiorari petition on June 15, 2000 (see Docket Entry 5, Ex. 2). Petitioner did not

-11-

file a certiorari petition with the United States Supreme Court. (Docket Entry 2, ¶ 9(h).) As Respondent has asserted (Docket Entry 5 at 2-3), and Petitioner has not disputed (Docket Entry 7 at 1-12), Petitioner's convictions thus became final on September 13, 2000, 90 days after the June 15, 2000 decision of the North Carolina Supreme Court denying Petitioner's certiorari petition. See Clay v. United States, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." (internal citations omitted)); see also Sup. Ct. R. 13.1 (allowing petitioners 90 days after highest state appellate court's denial to file for writ of certiorari). The limitations period then ran for 365 days until it expired a year later on September 13, 2001, over 10 years before Petitioner brought this action under § 2254.

Petitioner did make certain state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)" Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until August 24, 2011,[8] well after his

_____

[8] Even if the Court treated the MAR's filing date as August 12, 2011, the date Petitioner signed the document (see Docket Entry 2-4 at 15), the timeliness
(continued...)

time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance a reason why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 2 at 13, 18-19; Docket Entry 7 at 7-11.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

Petitioner contends that he "was never informed by [his attorneys] about the status of his misdemeanor appeal nor advised of the one year limitation period to appeal in federal court on [habeas] corpus." (Docket Entry 2 at 18.) Petitioner claims that these failures by counsel should excuse his late filing of the

---

[8](...continued)
analysis would not change, as his MAR would still remain over nine years beyond the expiration of the one-year limitations period. Moreover, the Court need not decide whether Petitioner's "Motion for DNA Testing" and "Motion to Locate and Preserve Evidence" constitute "application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim" entitling Petitioner to statutory tolling of the one-year limitations period under 28 U.S.C. § 2244(d)(2). Even if the motions constituted qualifying applications under § 2244(d)(2), their filing came over eight years after the applicable limitations period expired and, thus, cannot revive an already expired statute of limitation. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

instant Petition. (Id. at 13, 18-19.) This argument lacks merit. As an initial matter, Petitioner has not identified (and independent research has failed to reveal) any authority for the proposition that either trial or appellate counsel has an obligation to advise a defendant of post-conviction options other than direct appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).

Moreover, even if Petitioner's defense counsel (1) failed to adequately explain the status of Petitioner's misdemeanor appeal; and (2) had borne a duty to advise Petitioner about post-conviction remedies and failed to satisfy it in this case, Petitioner's argument still misses the mark. Simple negligence does not warrant equitable tolling. See Holland, 560 U.S. at ___, 130 S. Ct. at 2564; see also Hutchinson v. Florida, 677 F.3d 1097, 1100 (11th Cir. 2012) ("If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction . . . ."). "[T]o rise to the level necessary to constitute an 'extraordinary circumstance,' . . . attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship." Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012); see also Maples v. Thomas, 565 U.S. ___, ___ - ___ & n.7, 132 S. Ct. 912, 922-27 & n.7 (2012) (holding that attorneys' abandonment of petitioner constituted cause to overcome procedural default and remarking that distinction between attorney negligence and

-14-

attorney abandonment should apply equally in equitable tolling context).[9]

In sum, the Petition fails as a matter of law due to its untimeliness.[10]

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 4) is **GRANTED**, that Petitioner's Application for Appointment of Counsel and Request for Evidentiary Hearing (Docket Entry 8) is **DENIED**, that the Petition (Docket Entry 2) is **DENIED**, and that this action is **DISMISSED** pursuant to a contemporaneously entered judgment.

_____
/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: March 26, 2013

---

[9] Despite Petitioner's use of the term "abandoned" in his brief in opposition to Respondent's instant Motion to Dismiss (see Docket Entry 7 at 4 & n.1, 5), Petitioner has not alleged facts amounting to abandonment by either of his defense counsel. Each counsel represented Petitioner during his trials in the district and superior courts, respectively, and each timely noticed an appeal on behalf of Petitioner. (See Docket Entry 2-7 at 2, 4 and Docket Entry 2-11 at 2, 4.) Petitioner's superior court counsel represented Petitioner throughout his direct appeal to the North Carolina Court of Appeals. (See Docket Entry 2-2.) Moreover, the record reflects no basis to conclude that either counsel ever represented (much less abandoned) Petitioner in his pursuit of state or federal post-conviction relief.

[10] In addition to separately moving for appointment of counsel and an evidentiary hearing (see Docket Entry 8), Petitioner also included within his response in opposition to Respondent's instant Motion to Dismiss, a request that the Court order Respondent "to furnish complete State District Court transcripts, proceedings and/or records" from his trial on the misdemeanor assault charges (Docket Entry 7 at 2). In view of the Court's conclusion that the Petition is untimely, no basis exists to appoint counsel, to hold an evidentiary hearing, or to order production of documents.